## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 19 2017, 10:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy Ottis Hale, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 19, 2017 <br><br> Court of Appeals Case No. <br> 87A04-1706-CR-1501 <br><br> Appeal from the Warrick Superior Court <br><br> The Honorable J. Zach Winsett, Judge <br><br> Trial Court Cause No. <br> 87D01-1605-F5-192 |

**Baker, Judge.**

[1] Timothy Hale appeals his convictions for Level 4 Felony Causing Death When Operating a Vehicle with an ACE[1] of .15 or More[2] and for Level 5 Felony Causing Death When Operating a Vehicle While Intoxicated.[3] Hale argues that he received the ineffective assistance of trial counsel. We find that he did not receive ineffective assistance, but also sua sponte find that double jeopardy principles prohibit both of Hale's convictions from standing. Therefore, we affirm in part, vacate Hale's Level 5 felony conviction, and remand to the trial court with instructions to enter an amended abstract of judgment and an amended sentencing order.

## Facts

[2] On May 5, 2016, Hale was working at home when a friend, James Hopper, arrived. Hopper had been drinking whiskey and offered to share; Hale accepted. The two men eventually drove to a restaurant to have dinner. While at dinner, they each had one or two beers. After dinner, they went to a liquor store and bought one bottle of whiskey and one bottle of bourbon. They went to the home of some friends. While there, Hale had "at least three or four" drinks. Tr. Vol. III p. 116.

---

[1] ACE stands for "alcohol concentration equivalent[.]" Ind. Code § 9-30-5-5(a).

[2] I.C. § 9-30-5-5(c)(1).

[3] *Id.* at -5(a)(3).

[3]     Around 8:20 p.m., Hale began driving back home; Hopper was a passenger in the vehicle. At some point, Hale's truck swerved into oncoming traffic, nearly striking a vehicle going in the opposite direction. Hale's truck then swerved into a ditch, struck a concrete culvert and a utility pole, and flipped over. Hopper died as a result of the crash. Bystanders and responding officers saw two partially empty bottles of alcohol in the truck.

[4]     Shortly after the accident, Warrick County Sheriff's Deputy Kyle Tevault arrived at the scene. Deputy Tevault observed that Hale's speech was extremely slurred and noticed a strong odor of alcohol emanating from him. Hale was transported to the hospital, where he consented to a blood draw, which later revealed his blood alcohol content to be .295. At the hospital, Deputy Tevault spoke with Hale. The deputy had difficulty understanding Hale because of his slurred speech. Hale admitted that he and Hopper had drunk bourbon earlier in the evening and that he had a "fishbowl" of beer at dinner. Tr. Vol. II p. 97-98. He admitted that he was driving at the time of the accident and that Hopper was in the passenger's seat.

[5]     Indiana State Trooper Josh Greer, a certified crash reconstructionist, responded to the scene. He took photographs and measurements of the vehicle and the scene as part of his investigation. Trooper Greer concluded that the truck was traveling on the wrong side of the road leading up to the crash. Later, Trooper Greer reviewed the truck's event data recorder, which is analogous to the black boxes used on airplanes. Trooper Greer used a Bosch crash data retrieval tool to retrieve the information on the event data recorder; the information was

generated in the form of a report, which Trooper Greer used to reconstruct the crash. Trooper Greer then prepared his own report. The data regarding the truck's speed and usage of brakes indicated to Trooper Greer that there was a "whole lot going on" that indicated driver confusion, with "a whole lot of just smacking at the pedals." Tr. Vol. III p. 37. No other vehicle caused the accident; the sole cause was Hale, the operator of the truck.

[6] On May 10, 2016, the State charged Hale with Level 5 felony causing death when operating a motor vehicle while intoxicated and Level 4 felony causing death when operating a motor vehicle with an ACE of .15 or more.[4] Hale's jury trial took place from May 9 through May 11, 2017. At the trial, a number of things occurred that are relevant to this appeal:

- After the trial had begun, Juror #2596 informed the trial court that he had realized that he knew Hopper because they had been neighbors about two decades earlier. The juror indicated that it would have no impact on his ability to sit on the jury, and he was allowed to remain.
- Trooper Greer testified about the crash reconstruction. The State did not seek to have him qualified as an expert witness.
- Hale's attorney moved for a directed verdict at the close of the State's case-in-chief; the trial court denied the motion. Hale's attorney did not renew the motion at the close of the evidence.
- Hale's attorney attempted to introduce testimony that in the past, Hopper had become intoxicated and attempted to grab steering wheels operated by other drivers. The trial court did not permit that line of questioning to occur.

---

[4] Evidently the State also charged Hale with multiple lesser-included offenses. The trial court ultimately vacated the convictions for the lesser-included offenses. The full charging information is not part of the record on appeal.

- Hale's attorney indicated to the trial court that John King, a former police officer, would be called to testify generally about the effectiveness of prison as a remedy for certain types of offenses. The trial court refused to allow King to testify.

On May 11, 2017, the jury found Hale guilty as charged. On June 6, 2017, the trial court sentenced Hale to concurrent terms of three years imprisonment for the Level 5 felony and six years imprisonment for the Level 4 felony. Hale now appeals.

# Discussion and Decision

## I. Assistance of Counsel

[7] Hale argues that he received the ineffective assistance of trial counsel.[5] A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant such that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 763 N.E.2d 441, 444 (Ind. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "A reasonable probability arises when there is a 'probability sufficient to undermine

___

[5] Because Hale raises a claim of ineffective assistance of trial counsel in a direct appeal, he is foreclosed from raising an ineffectiveness of trial counsel claim in a future post-conviction proceeding. *E.g.*, *Jewell v. State*, 887 N.E.2d 939, 941 (Ind. 2008).

confidence in the outcome.'" *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694).

[8]     In this case, Hale argues that his trial counsel was ineffective for the following reasons: (1) failing to ask that Juror #2596 be removed; (2) failing to challenge Trooper Greer's expert qualifications (the State did not seek to qualify Trooper Greer as an expert); (3) failing to make a second motion for directed verdict; (4) trying too hard to get inadmissible specific acts testimony into evidence; (5) not trying hard enough to introduce general testimony about the effectiveness of prison as a remedy; and (6) not giving a sufficiently persuasive closing argument.

### 1. Juror #2596

[9]     Hale contends that his attorney was ineffective for failing to request that Juror #2596 be removed after the juror realized that, nearly two decades earlier, the deceased had been his upstairs neighbor. The connection was so attenuated that the juror did not even realize he had known Hopper until the State had presented three witnesses in its case-in-chief. The juror told the trial court that his previous acquaintanceship with Hopper would have no impact on his ability to sit on the jury. Under these circumstances, it was reasonable for counsel to refrain from asking that the juror be excused. And even if counsel had requested the juror's removal, the trial court would almost certainly have denied it. Therefore, we find no ineffectiveness on this basis.

## 2. Trooper Greer

Hale's next argument is somewhat unclear. He appears to contend that counsel should have objected to Trooper Greer's qualifications as an expert witness. The State, however, did not offer Trooper Greer as an expert witness, instead offering him as a skilled witness. Ind. Evidence Rule 701; *see also Satterfield v. State*, 33 N.E.3d 344, 352-53 (Ind. 2015) (noting that "lay and skilled witnesses testify from their perceptions" and that "[s]killed witnesses . . . possess knowledge beyond that of the average juror"). Consequently, had counsel objected to Trooper Greer's qualifications as an expert witness, the objection would have been overruled. We note that counsel did, in fact, object during the trooper's testimony, both to the Bosch report and to the accident reconstruction report, and both objections were overruled. We do not find that trial counsel was ineffective related to Trooper Greer's testimony.

## 3. Second Motion for Directed Verdict

Trial counsel moved for a directed verdict at the close of the State's case-in-chief, and that motion was denied. Hale argues, however, that counsel should have made a second motion for a directed verdict at the conclusion of the evidence. He contends, somewhat confusingly, that the State charged him with a violation of Indiana Code section 9-30-5-5(b)(1), which makes it a Level 4 felony to cause death when operating while intoxicated if the driver has a previous conviction of operating while intoxicated within the previous ten years. According to Hale, his attorney should have moved for a directed verdict because the State failed to prove that he had a previous conviction.

It is unclear why he believes that he was charged with this offense—especially because he has failed to include the charging information in the appendix—as all the evidence and argument at trial, the jury instructions, and the verdict form clearly indicate that the State charged him with a violation of Indiana Code section 9-30-5-5(c)(1).[6] Given the record before us, it is apparent that it would have been futile for counsel to have requested a directed verdict on this basis. Consequently, counsel was not ineffective for failing to move for a second directed verdict.

### 4. Specific Acts Testimony

Trial counsel attempted to introduce the testimony of a witness who planned to testify that in the past, Hopper had gotten intoxicated and attempted to grab the steering wheels of other drivers. The trial court ruled against admitting this testimony because a person's character may not be established by specific acts. Ind. Evidence Rules 405, 406. Counsel argued strenuously that this testimony constituted admissible habit evidence rather than inadmissible specific acts testimony, but the trial court ruled against her. And she continued to attempt to introduce this evidence, which she believed was helpful to her client, even making an offer to prove. Under these circumstances, we fail to see how counsel's performance was ineffective.

---

[6] His belief may be based on an apparent scrivener's error in the Chronological Case Summary, which indicates that he was convicted of a violation of section -5(b)(1). Given the content of the trial, the jury instructions, and the verdict form, however, we have no difficulty concluding that this was merely an inadvertent error.

### 5. General Prison Testimony

Counsel indicated to the trial court that she intended to call John King as a witness. King is a former police officer, and counsel stated that she anticipated that he would testify "that prison does not work for certain types of offenses." Appellant's Br. p. 15. The State objected, stating that King was not qualified to testify on this topic because he was a police officer and did not work inside the prison system. The trial court responded that if King's testimony was not specific to Hale, and would be "generally his experience as a police officer and how prison sentences don't work, then I'd have to agree with [the prosecutor] that he's not qualified." Tr. Vol. IV p. 156. The trial court indicated to counsel that she was free to call King to testify, but made it clear that the expected testimony would not be admitted. We find no fault in counsel's decision to refrain from calling King to testify, as it is apparent that the action would have been futile. Therefore, counsel was not ineffective on this basis.

### 6. Closing Argument

Finally, Hale contends that counsel made an inadequate closing argument. According to Hale, her argument was too short and did not make a sufficiently compelling case. We agree with the State that counsel's argument, which highlighted reasonable doubt and cited to evidence that Hopper caused the accident by grabbing and pulling at the wheel, was the best available given the overwhelming evidence of her client's guilt. The length of closing is certainly not a barometer by which to gauge an attorney's effectiveness. Her argument

was short, direct, and made the only possible arguments available to her client. We do not find her ineffective in this regard.

[16] Wholly separate from all the above claimed deficiencies is the following evidence supporting Hale's guilt: he consumed alcohol over the course of the afternoon and evening leading up to the crash. Hale himself admitted at trial to drinking whiskey, beer, and bourbon that afternoon and evening. Partially empty bottles of alcohol were found in Hale's truck, he admitted to the police that he had been drinking bourbon and a "fishbowl" of beer, tr. vol. II p. 97-98, and his speech was extremely slurred after the accident. Hale consented to a blood draw, which revealed a blood alcohol content of .295. Hale was the driver of the truck, which swerved into oncoming traffic and then crashed into a ditch, a concrete culvert, and a utility pole. Hopper died as a result of the crash. Consequently, all elements of the charged offenses are readily proved by the unchallenged evidence: intoxication, blood alcohol content over .15, operation, accident, and fatality.

[17] None of the specific claims of ineffectiveness impact the admission of the above evidence, nor does any specific instance of ineffectiveness (or the cumulative effect of all the claimed instances) call into question the overwhelming evidence supporting Hale's guilt. Therefore, we find that Hale has established neither deficient performance nor prejudice.

# II. Double Jeopardy

[18] We are compelled to consider the issue of double jeopardy *sua sponte*. Indiana's double jeopardy clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015). Our Supreme Court has held that two or more offenses are the "same offense," in violation of our Constitution's double jeopardy clause, "if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999) (emphases original). Under the actual evidence test, the "actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts." *Id.* at 53.

[19] Here, Hale was convicted of (1) Level 4 felony causing death when operating a vehicle with an ACE of .15 or more; and (2) Level 5 felony causing death when operating while intoxicated. We can only conclude that the same behavior— operating a vehicle while intoxicated, causing death—formed the basis for both convictions. Consequently, the same actual evidence presented at trial supported both convictions, and both may not stand. *See, e.g.*, *Wharton v. State*, 42 N.E.3d 539 (Ind. Ct. App. 2015) (finding double jeopardy violation where defendant was convicted of operating while intoxicated with a prior conviction and operating with an ACE of .08 or more with a prior conviction); *West v. State*, 22 N.E.3d 872, 874-75 (Ind. Ct. App. 2014) (finding double jeopardy

violation where defendant was convicted of operating while intoxicated and operating with a blood alcohol content of .15 or more).

[20] A violation of double jeopardy principles requires that we vacate the conviction with the less severe penal consequences. *E.g.*, *Moala v. State*, 969 N.E.2d 1061, 1065 (Ind. Ct. App. 2012). Therefore, we vacate Hale's Level 5 felony causing death when operating while intoxicated conviction and remand with instructions to enter an amended abstract of judgment and an amended sentencing order.

[21] The judgment of the trial court is affirmed in part, vacated in part, and remanded with instructions to enter an amended abstract of judgment and an amended sentencing order.

Riley, J., and Brown, J., concur.